UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
IN THE MATTER OF THE PETITION

of

CECILIO JAVIER ADAMES, AS OWNER OF A
30-FOOT 1995 GRADY WHITE RUNABOUT
(HIN: NTLDY379D494) FOR EXONERATION
FROM OR LIMITATION OF LIABILITY

-----------------------------------------------------------X

**ORDER**
25 CV 4680 (LDH) (CLP)

On August 22, 2025, petitioner Cecilio Javier Adames ("Adames"), the owner of a 30-foot 1995 Grady White Runabout (the "Vessel"), petitioned the Court seeking exoneration from, or limitation of liability, pursuant to the Limitation of Liability Act, 46 U.S.C. § 30501 *et seq*. (formerly 46 U.S.C. §§ 183 *et seq*.) and Rule 9(h) of the Federal Rules of Civil Procedure, following an incident on February 23, 2024 wherein the Vessel encountered bad weather and sank off the coast of Breezy Point, Brooklyn, New York, resulting in the death of the petitioner and two passengers (hereinafter, the "Incident"). (ECF No. 1 ¶ 11). On September 25, 2025, this Court recommended granting the motion. (ECF No. 5). On October 30, 2025, the petitioner's widow, Francisca Adames, filed a motion to substitute herself as the petitioner pursuant to Rule 25 of the Federal Rules of Civil Procedure. (ECF No. 6).

The positioning of this case is unique—as of now, no complaint has been filed. Thus, the question before this Court is whether a party in interest may be substituted for a predeceased plaintiff in a matter where liability has been limited under the Limitation of Liability Act but a complaint has not yet been filed.

DISCUSSION

    A. <u>Rule 25</u>

Under Rule 25(a)(1), if a party dies and the claim is not extinguished, the Court may order substitution of the proper party. Fed. R. Civ. P. 25(a)(1). "[A] motion to substitute must (1) be timely; (2) include claims that survive decedent's death; and (3) propose a proper party as a substitute." <u>Galeas v. Houslanger & Assocs., PLLC</u>, No. 19 CV 4270, 2021 WL 2843214, at *2 (E.D.N.Y. June 21, 2021) (citation omitted). The motion must also be properly served under Rules 4 and 5. Fed. R. Civ. P. 25(a)(3). Motions made under Rule 25 are "freely granted." <u>O'Neil v. Lowe's Home Ctrs., LLC</u>, No. 20 CV 1225, 2021 WL 11687950, at *1 (E.D.N.Y. Oct. 22, 2021) (citation omitted). <u>See also</u> <u>Saylor v. Bastedo</u>, 623 F.2d 230, 237 (2d Cir. 1980) (finding "it is difficult to imagine a case where discretion might properly be exercised to deny a motion to substitute for a deceased plaintiff made within [Rule 25's] time limits").

Courts have held that a motion to substitute a party under Rule 25 "cannot be made until after a formal written statement of fact of death has been filed with the Court and served on the involved parties." <u>Natale v. Country Ford Ltd.</u>, 287 F.R.D. 135, 136 (E.D.N.Y. 2012) (citing <u>Unicorn Tales, Inc. v. Banerjee</u>, 138 F.3d 467, 469–70 (2d Cir. 1998)). <u>See also</u> Moore's Federal Practice § 25.13[2][b] (3d ed. 2008) (Rule 25 "implies that the statement noting the death of a party ... must be a formal, written document that is both served on the appropriate persons and filed with the court"). Rule 25 requires a motion to substitute parties, as well as a proper notice of death, to be served under Rules 4 and 5. Fed. R. Civ. P. 25(a)(3). Where service has not been effectuated, substitution is not ripe. <u>See</u> <u>Wyndham Vacation Ownership, Inc. v. U.S. Consumer Attorneys, P.A.</u>, No. 18 CV 81251, 2019 WL 7837360, at *1 (S.D. Fla. Aug. 22, 2019) (holding that a motion to substitute parties following the original party's death was "not ripe for decision

2

because Plaintiffs have not effectuated service under Federal Rule of Civil Procedure 4"). Courts strictly adhere to the formality of Rule 25's requirements to "ensure[] that the information reaches all parties." National Equip. Rental, Ltd. v. Whitecraft Unlimited, Inc., 75 F.R.D. 507, 510 (E.D.N.Y. 1977). This is necessary "to prevent a situation in which a case is dismissed because a party never learned of the death of an opposing party." Unicorn Tales, Inc. v. Banerjee, 138 F.3d at 469–70.

Currently, this matter is limited to a motion to limit liability for a maritime incident—a motion made to proactively limit liability before a suit is ever filed. Thus, there are no parties upon whom a notice of death could be filed. Accordingly, Rule 25 is not the proper vehicle to pursue substitution in this matter.

    B. Rule 17

Federal Rule of Civil Procedure 17 may yet salvage Mrs. Adames's request.

Rule 17(a)(3) provides that a court "may not dismiss an action for failure to prosecute in the name of the real party in interest until, after an objection, a reasonable time has been allowed for the real party in interest to ratify, join, or be substituted into the action." Substitution under Rule 17 "should be liberally allowed when the change is merely formal and in no way alters the original complaint's factual allegations as to the events or the participants." Advanced Magnetics, Inc. v. Bayfont Partners, Inc., 106 F.3d 11, 20 (2d Cir. 1997). See Park B. Smith, Inc. v. CHR Indus. Inc., 811 F. Supp. 2d 766, 773 (S.D.N.Y. 2011) (finding that "courts in the Second Circuit have generally allowed for substitution when a mistake has been made as to the person entitled to bring suit and such substitution will not alter the substance of the action"). Leave to substitute the real party in interest should be granted if "(1) the defect in the named plaintiffs plausibly resulted from mistake ('mistake' prong), and (2) correcting this defect would not

3

unfairly prejudice defendants by changing the particulars of the claims against them ('prejudice' prong)." Wiwa v. Royal Dutch Petrol. Co., Nos. 96 CV 8386, 2009 WL 464946, at *10, n.34 (S.D.N.Y. Feb. 25, 2009) (citing Advanced Magnetics, Inc. v. Bayfont Partners, Inc., 106 F.3d at 20–21).

The question, then, is whether the Court may allow substitution under Rule 17 where a pre-complaint petitioner was deceased *ab initio*. A review of the law of this Circuit persuades the Court to allow the substitution.

Generally, "the party invoking jurisdiction [must have] the requisite stake in the outcome" of the suit. Davis v. Federal Election Comm'n, 554 U.S. 724, 734 (2008). Some courts in other circuits have interpreted this to mean that a case initiated by a plaintiff who lacks standing, such as a deceased plaintiff, is an incurable nullity. See, e.g., House v. Mitra QSR KNE LLC, 796 Fed. App'x 783, 791 (4th Cir. 2019); In re Engle Cases, No. 09 CV 10000, 2013 WL 8115442, at *2 (M.D. Fla. Jan. 22, 2013), aff'd, 767 F.3d 1082 (11th Cir. 2014); In re Asbestos Prods. Liability Litig., 311 F.R.D. 152, 156 (E.D. Pa. 2015) (holding that "since the deceased Plaintiffs had no legal existence when their complaints were filed, their suits are nullities with no legal effect"); In re Proton-Pump Inhibitor Prods. Liab. Litig., No. 17 MD 2789, 2022 WL 17850260, at *2 (D.N.J. Dec. 22, 2022) (finding the nullity doctrine provides "that because 'a party must have a legal existence as a prerequisite to having the capacity to sue or be sued' and 'a person who dies prior to filing suit is not a legal entity,' an action filed solely on behalf of the deceased 'is a nullity'") (quoting Adelsberger v. United States, 58 Fed. Cl. 616, 618 (Fed. Cl. 2003)); Chaisson v. State Farm Fire and Cas. Co., No. 23 CV 2551, 2024 WL 4271555, at *3 (E.D. La. Sept. 23, 2024).

Until recently, courts in the Second Circuit also followed this "nullity doctrine." See, e.g., Cortlandt Street Recovery Corp. v. Hellas Telecommunications S.à.r.l., 790 F.3d 411 (2d Cir. 2015); Banakus v. United Aircraft Corp., 290 F. Supp. 259, 260 (S.D.N.Y. 1968). However, the Second Circuit clarified the issue in 2021, holding that a real party in interest may prosecute a claim if such party existed at the time the pleading was filed. Fund Liquidation Holdings LLC v. Bank of Am. Corp., 991 F.3d 370, 336 (2d Cir. 2021).

Before the Second Circuit's ruling in Fund Liquidation Holdings, a case filed by a deceased plaintiff would have been void *ab initio*, consistent with the holdings in several other circuits. For example, in Cortlandt Street Recovery Corp. v. Hellas Telecommunications S.à.r.l.,[1] the Second Circuit held that a case brought by a plaintiff who lacked Article III standing was void from the start: there is "therefore no lawsuit pending for the real party in interest to 'ratify, join, or be substituted into' under Rule 17(a)(3) or otherwise." 790 F.3d at 422–23. However, in Cortland, because substitution of the original noteholders would have created a separate jurisdictional problem, the appeals court expressly stated that it "need not…resolve th[e] question to dispose of [plaintiff's] request to attempt to cure the standing defect under Fed. R. Civ. P. 17(a)(3)." Id. at 423. Indeed, in his concurrence, Judge Sack even suggested rejecting the nullity doctrine because it was "highly technical [and] without meaningful purpose." Id. at 427.[2]

---

[1] In Cortlandt, plaintiff, a purported assignee of certain subordinate notes issued by a then-dissolved entity filed suit attempting to collect under the notes. 790 F.3d at 415. Because plaintiff had failed to plead title to claims arising under the notes and the parties disputed whether there had been an actual assignment, the district court dismissed for lack of standing. Id. at 416 . On appeal, plaintiff argued that the dismissal was based solely on the fact that plaintiff was not the real party in interest and that the district court erred in failing to allow plaintiff to substitute the proper parties under Rule 17 as the real party in interest. Id. at 421. The circuit court affirmed the denial of plaintiff's motion under Rule 17(a)(3) to substitute the original noteholders for plaintiff, explaining that even if substitution were allowed, jurisdiction would still be lacking because the noteholders, foreign citizens, were not diverse from the foreign defendants; thus, diversity jurisdiction would be lacking. Id. at 424.

[2] Judge Sack also authored the majority opinion.

5

Although the Cortlandt court expressly declined to define the applicability of Rule 17(a)(3), nevertheless, other Second Circuit panels interpreted Cortlandt to mean that a court has no subject matter jurisdiction where the original plaintiff lacked standing, regardless of whether a real party in interest with standing existed at the time the complaint was filed. In Klein ex rel. Qlik Techs. v. Qlik Techns., Inc., for example, a shareholder of a corporation brought a derivative securities action on behalf of a corporation which was later bought in an all-cash merger, causing the shareholder to lose her financial interest in the litigation. 906 F.3d 215 (2d Cir. 2018). To remedy the loss of standing, the shareholder moved to substitute the corporation, the issuer of the at-issue securities, as the real party in interest under Rule 17. Id. at 219. The district court dismissed the case, finding that the lack of standing defeated subject matter jurisdiction, and holding that Rule 17 only allows substitution when there has been an "honest mistake in selecting the proper party." Id. at 219, 226. The Second Circuit vacated the dismissal, finding that substitution was "necessary to avoid injustice," but cited Cortlandt for the proposition that "in the absence of a plaintiff with standing…there [is]…no lawsuit pending for the real party in interest to 'ratify, join, or be substituted into' under Rule 17(a)(3) or otherwise." Id. at 227, n. 7.

Dekalb County Pension Fund v. Transocean Ltd., also held that a court lacks subject matter jurisdiction over a case brought by a plaintiff who lacks standing, even where a real party in interest otherwise had standing. 817 F.3d 393 (2d Cir. 2016), cert. denied, 582 U.S. 952 (2017). In that case, a union's pension fund filed a derivative shareholder class action against an offshore drilling company for misstatements in a merger proxy statement. Id. at 399. Dekalb County Pension Fund, another shareholder in the drilling company, subsequently joined the action and was appointed co-lead counsel with the union pension fund. Id. The district court later dismissed the union pension fund for lack of standing, finding that the fund was never

6

eligible to vote on the merger, leaving the County Pension Fund as the sole lead plaintiff. Id. at 400. The County Pension Fund filed an amended complaint, which the defendant sought to dismiss by arguing that the statute of limitations had run between the time that the union pension fund brought the case and when the County Pension Fund joined. Id. The district court agreed with the defendant and dismissed the case. Id. On appeal, the County Pension Fund argued that its claims related back to the initial complaint because the County Pension Fund was substituted as the real party in interest and the claims were therefore timely. Id. at 412. The dismissal was affirmed on appeal and the Second Circuit, relying on Cortlandt, held that the County Pension Fund's claims could not relate back to the initial complaint under Rule 17 because the pension fund's lack of funding rendered the initial complaint a nullity. Id. at 412–13.

In 2021, the Second Circuit reexamined the nullity doctrine in Fund Liquidation Holdings. That case involved a class action brought in the name of two dissolved investment funds. 991 F.3d at 376. Upon dissolution, five years before the case was brought, the funds had assigned all claims to their successor-in-interest, Fund Liquidation Holdings LLC ("Fund Liquidation"). Id. Both the initial complaint and first amended complaint, however, omitted to mention that the original funds had dissolved five years earlier and that the rights to the claims had been assigned to Fund Liquidation, which was secretly directing the litigation from the start. Id. It was only once the second amended complaint was filed over a year after the case was initiated that the dissolution was brought to light, at which point defendants moved to dismiss. Id. at 377. Fund Liquidation moved to be substituted under Rule 17 and, rather than dismissing the case, the district court found that Fund Liquidation had received a full assignment of rights from the dissolved funds and permitted Fund Liquidation to amend the complaint a third time. Id. Fund Liquidation amended the complaint, naming itself as plaintiff "as assignee and

7

successor-in-interest to [the dissolved fund]." Id. (citation omitted). Defendants once again moved to dismiss arguing, *inter alia*, that Fund Liquidation could not be substituted under Rule 17 because the case, initiated by dissolved corporations with no legal existence, was a nullity from the outset. Id. at 378. Relying on Cortlandt and Klein, the district court dismissed, holding that the lack of subject matter jurisdiction could not be cured. Id. (discussing Fund Liquidation Holdings LLC v. Citibank, N.A., 399 F. Supp. 3d 94, 103 (S.D.N.Y. 2019) (holding that "[t]he substitution of [Fund Liquidation] under Fed. R. Civ. P. 17(a)(3) could not repair the basic deficiency of [the dissolved funds'] pleading, since Rule 17 allows substitutions to cure mistakes, not repair an absent substance")).

      The appeals court disagreed. Instead, it held that the nullity doctrine was an open question in the Second Circuit because the panels in DeKalb County Pension Fund and Klein misinterpreted dicta in Cortlandt as a holding that the nullity doctrine is Second Circuit law. Id. at 386. Instead, the Second Circuit in the Fund Liquidation appeal explained that Cortlandt's discussion about Rule 17 was "merely a summary of the district court's reasoning that the panel in Cortlandt expressly refused to adopt." Id. See also Cortlandt Street Recovery Corp. v. Hellas Telecommunications S.à.r.l., 790 F.3d at 423 (declining to decide "whether a plaintiff may use Rule 17(a)(3) to remedy a standing deficiency when it lacks standing as to all of its claims" (emphasis omitted)). The circuit court concluded that "a complaint filed in the name of a non-existent entity"—such as a dissolved corporation or, here, a decedent—"on behalf of a real party in interest, meets the requirement that the party invoking jurisdiction ha[ve] the requisite stake in the outcome when the suit [i]s filed." Id. at 389 (quotation omitted). It reasoned that the real party in interest has legal title to the claim asserted and used to invoke the court's jurisdiction and that, because "a real party in interest who has been assigned a claim is the functional

8

equivalent of the original plaintiff," joining an assignee does not substitute a new cause of action over which there is subject matter jurisdiction for one in which there is not. Id. The court explained that Rule 17 substitution was "plainly the more practical approach to permit parties to circumvent the needless formality and expense of instituting a new action simply to correct a technical error in the original pleading's caption." Id. at 391 (citing Cortlandt Street Recovery Corp. v. Hellas Telecommunications S.à.r.l., 790 F.3d at 427; Link Aviation, Inc. v. Downs, 325 F.2d 613, 615 (D.C. Cir. 1963); Northstar Fin. Advisors, Inc. v. Schwab Invs., 779 F.3d 1036, 1044–48 (6th Cir. 2002)).

Although the case at bar here is procedurally distinct from Fund Liquidation Holdings, the reasoning of Fund Liquidation Holdings nevertheless applies. First, Mrs. Adames, as representative of Mr. Adames's estate, is "the party with the stake in the controversy that is being used to invoke the court's jurisdiction," and she is the real party in interest. See id. at 389. Second, substitution of Mrs. Adames as the petitioner would alter the action in form only, and not in substance. Indeed, the Court would need to stretch its imagination to conjure a procedural posture less prejudicial—here, there is no complaint, no claims have been filed, no defendants have been named, and the petitioner is the only party to the action. Finally, "it is plainly the more practical approach" to allow substitution here where the alternative to substitution would be to deny the petition, which would dissolve the protections of the Limitation of Liability Act and result in severe prejudice to the Adames estate. See id. at 392 (holding that "it is plainly the more practical approach to permit parties to circumvent the needless formality and expense of instituting a new action simply to correct a technical error in the original pleading's caption").

Allowing substitution here also aligns with the purpose of Rule 17(a)(3). That provision was "'intended to prevent forfeiture when determination of the proper party to sue is difficult or

9

when an understandable mistake has been made.'" Ripple Analytics Inc. v. People Ctr., Inc., No. 20 CV 894, 2023 WL 4763256, at *3 (E.D.N.Y. July 26, 2023) (quoting Fed. R. Civ. P. 17(a)(3), advisory committee's note to 1966 amendment), aff'd, 153 F.4th 263 (2d Cir. 2025). Indeed, the cases cited by the Advisory Committee when discussing the adoption of Rule 17(a)(3) encourage this "pragmatic approach." See Cortlandt Street Recovery Corp. v. Hellas Telecommunications S.à.r.l., 790 F.3d at 427 (Sack, J., concurring). In Link Aviation, Inc. v. Downs, for example, when two subrogated parties mistakenly brought suit in their own names, the D.C. Circuit held that substitution was permitted because "[a]ny other rule would be highly technical without meaningful purpose" and substitution would "not deprive the suit of a status which enabled the [subrogees] to substitute themselves as plaintiffs and continue the suit in their own names." 325 F.3d at 615.

In the Advisory Committee's other cited case, Levinson v. Dupree, a maritime case brought by an ancillary administrator of a boating accident victim's estate, defendants challenged the administrator's capacity to sue because her appointment as administrator was established in the incorrect county. 345 U.S. 648, 649 (1953). The trial court issued a demurrer and held that a new appointment in the correct county would not relate back to the date the complaint was filing, thus barring her claim under the statute of limitations. Id. at 649–50. Reversing the Sixth Circuit's affirmation of the district court decision, the Supreme Court held that the administrator should be permitted to amend his complaint to avoid the statute of limitations. Id. at 652. In citing these two cases, the Advisory Committee emphasized that these decisions "are inclined to be lenient when an honest mistake has been made in choosing the party in whose name the action is to be filed—in both maritime and nonmaritime cases." Fed. R. Civ. P. 17(a)(3), advisory committee notes, 1966.

10

Thus, Mrs. Adames's substitution rectifies a mistake and neither prejudices any current or future party nor runs abreast of the very policies accomplished by Rule 17. Accordingly, the Court permits Mrs. Adames to be substituted as the petitioner in this action so that the protections provided to estate by the Limitation of Liability Act survive.

## CONCLUSION

For the reasons set forth above, the Court grants Mrs. Adames's motion for substitution. Mrs. Adames shall file an amended petition by **December 19, 2025**.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
       December 9, 2025

/s/ Cheryl L. Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York